UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SERIS SECURITY NV,<br>DANNY VANDORMAEL,<br>PETER VERPOORT, and<br>JEAN PAUL VAN AVERMAET<br><br>Defendants. | Criminal No.<br><br>Filed:<br><br>Violation: 15 U.S.C. § 1<br>Conspiracy in Restraint of Trade |

**The Grand Jury charges that at all times relevant to this Indictment:**

COUNT ONE
Conspiracy in Restraint of Trade
(15 U.S.C. § 1)

BACKGROUND

1. The Department of Defense maintains military bases in Belgium to protect the national security of the United States. On behalf of the United States government, the Department of Defense enters into and funds contracts for security services with SERIS SECURITY NV and others to protect these physical locations and the safety of personnel stationed there.

2. Security services include individual guards protecting physical buildings, mobile monitoring of certain locations, and electronic surveillance of defined areas. Individual customers, including the Department of Defense, seeking security services issued tenders and invited firms to bid on these contracts. These tenders listed the location to be guarded, the duration of the services, and the overall scope of services sought. When a company submitted a winning bid, it was selected to enter into a contract with the customer for the provision of the services sought.

## DEFENDANTS AND CO-CONSPIRATORS

3. Defendant SERIS SECURITY NV ("SERIS") was a company organized and existing under the laws of Belgium and had its principal place of business in Brussels, Belgium. SERIS was a provider of security services to a variety of customers in Belgium. Defendant SERIS submitted bids for and was awarded contracts for the provision of security services in Belgium, including those with the United States, through the Department of Defense.

4. Defendant DANNY VANDORMAEL ("VANDORMAEL") was a resident and citizen of Belgium. From at least as early as 2007 and continuing until 2020, the exact dates being unknown to the Grand Jury, VANDORMAEL was employed as the Chief Executive Officer for SERIS, and in that role oversaw the provision of security services.

5. Defendant PETER VERPOORT ("VERPOORT") was a resident and citizen of Belgium. From at least as early as 2007 and continuing until 2020, the exact dates being unknown to the Grand Jury, VERPOORT was employed as the Director, Guarding & Monitoring for SERIS, and in that role was responsible for the guarding and monitoring services provided by SERIS.

6. G4S SECURE SOLUTIONS NV ("G4S"), charged elsewhere, was a company organized and existing under the laws of Belgium and had its principal place of business in Brussels, Belgium. G4S was a provider of security services to a variety of customers in Belgium.

7. Defendant JEAN PAUL VAN AVERMAET ("VAN AVERMAET") was a resident and citizen of Belgium. From at least as early as 2010 and continuing until 2020, the exact dates being unknown to the Grand Jury, VAN AVERMAET was employed as the Chief Executive Officer for G4S, and in that role oversaw the provision of security services.

8. Individual 1 resided in Belgium and was employed as the Sales Director for G4S, and in that role was responsible for the sales of security services provided by G4S.

9. Individual 2 resided in Belgium and was employed as the Operations Director for G4S, and in that role was responsible for security services operations at G4S.

10. Company A was a company organized and existing under the laws of Belgium and had its principal place of business in Brussels, Belgium. Company A was a provider of security services to a variety of customers in Belgium.

11. Individual 3 resided in Belgium and was employed as the Country President for Company A, and in that role oversaw the provision of security services.

12. Individual 4 resided in Belgium and was employed as the Director of Guarding Operations for Company A, and in that role was responsible for the guarding and monitoring services provided by Company A.

13. Defendant SERIS, G4S, and Company A were competitors in the security services industry in Belgium.

14. Various corporations and individuals, not made Defendants in this Indictment, participated as co-conspirators in the offense charged herein and performed acts and made statements in furtherance thereof.

15. Whenever in this Indictment reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

## DESCRIPTION OF THE OFFENSE

16. Beginning at least as early as Spring 2019 and continuing until as late as Summer 2020, the exact dates being unknown to the Grand Jury, the Defendants

> **SERIS SECURITY NV,**
> **DANNY VANDORMAEL,**
> **PETER VERPOORT, and**
> **JEAN PAUL VAN AVERMAET**

and their co-conspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition by allocating customers, rigging bids, and fixing prices for contracts for the provision of security services in Belgium, including those with the United States, through the Department of Defense, and those with the North Atlantic Treaty Organization (NATO) Communications and Information Agency (the "NCI Agency"), which is funded in part by the United States. The combination and conspiracy engaged in by the Defendants and their co-conspirators was a *per se* unlawful, and thus unreasonable, restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

17. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the Defendants and their co-conspirators, the substantial terms of which were that they would allocate customers, rig bids, and fix prices for contracts for the provision of security services in Belgium, including contracts with the United States and the NCI Agency, by coordinating price increases; submitting artificially-determined, non-competitive, inflated bids; and refraining from bidding for certain contracts. The objective of the conspiracy was to be awarded certain security services contracts, including those with the United States, through the Department of Defense, and those with the NCI Agency, which is funded in part by the United States, and receive payments for those contracts, including from the Department of Defense, at non-competitive, inflated prices for the duration of the contracts.

## MEANS AND METHODS OF THE CONSPIRACY

18. For the purpose of forming and carrying out the charged combination and conspiracy, the Defendants and co-conspirators did those things that they combined and conspired to do, including, among other things:

(a) attending meetings and engaging in discussions during which they agreed to allocate customers, rig bids, and fix prices. For example, on September 17, 2019, VAN AVERMAET organized a "BVBO coordination" breakfast meeting with VANDORMAEL and Individual 3 at a hotel in Belgium;

(b) participating in meetings to discuss which co-conspirator would submit the winning bid on particular tenders, including those issued by the Department of Defense for locations in Belgium. For example, on December 16, 2019, to facilitate allocation of upcoming tenders, VERPOORT sent an email to Individual 1, Individual 2, and Individual 4 suggesting each of them prepare a list of contracts "that are important in 2020" for discussion at a meeting on December 20, 2019;

(c) communicating with each other via phone, text message, encrypted messaging applications, and email to discuss which co-conspirator would submit the winning bid on particular tenders, including those issued by the Department of Defense for locations in Belgium. For example, during March 2020, VANDORMAEL sent a series of encrypted messages to Individual 3 where VANDORMAEL sought confirmation from Individual 3 that Company A would bid at artificially high prices suggested by VANDORMAEL for a particular Department of Defense tender. In these messages, VANDORMAEL reminded Individual 3 of the "vice versa" arrangement requiring Company A to submit a non-

competitive bid in exchange for SERIS having submitted a non-competitive bid for another contract, which Company A won;

(d)  agreeing, during those meetings and communications, not to compete against each other for particular tenders, including those issued by the Department of Defense for locations in Belgium;

(e)  submitting or withholding bids in accordance with the agreements reached, including to and from the Department of Defense for locations in Belgium;

(f)  providing security services at collusive and non-competitive prices, including to the Department of Defense at locations in Belgium; and

(g)  receiving payments for security services at collusive, non-competitive prices, including from the Department of Defense for locations in Belgium.

## TRADE AND COMMERCE

19.  The United States solicited bids from and entered into contracts with the Defendants for security services provided to United States military bases in Belgium. The charged combination and conspiracy had a direct, substantial, and reasonably foreseeable effect on U.S. interstate, import, and export trade and commerce, and that effect, in part, gives rise to this charge. The charged combination and conspiracy also had a substantial and intended effect in the United States.

20.  For example: (a) the charged combination and conspiracy prevented the Department of Defense from receiving true competition for bids on a contract for security services in Belgium; (b) the charged combination and conspiracy also caused the Department of Defense to pay non-competitive prices for security services provided at military bases and installations in Belgium; and (c) proposals, contracts, invoices for payment, payments, and other documents and

items essential to the provision of security services were transmitted in foreign trade and commerce between the Defendants and their co-conspirators located in Belgium and their customers located in the United States and elsewhere.

21. The business activities of Defendants and their co-conspirators in connection with the security services contracts that are the subject of this Indictment were within the flow of, and substantially affected, commerce among the states and with foreign nations.

**ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.**

Dated:

A TRUE BILL

_____

FOREPERSON

_____  
RICHARD A. POWERS  
Acting Assistant Attorney General

_____  
MARVIN N. PRICE, JR.  
Director of Criminal Enforcement

_____  
JOSEPH MUOIO  
Chief, New York Office

U.S. Department of Justice  
Antitrust Division

_____  
EYITAYO ST. MATTHEW-DANIEL  
Assistant Chief, New York Office

_____  
BRYAN SERINO  
DINA HOFFER  
KATHRYN KUSHNER  
Trial Attorneys, New York Office

U.S. Department of Justice  
Antitrust Division  
26 Federal Plaza, Suite 3630  
New York, NY 10278  
Tel: 212-335-8000