UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JEAN-PAUL VAN AVERMAET, *et al.*,<br><br>Defendants. | Case No. 1:21-CR-443 (TSC) |

**MOTION FOR ISSUANCE OF REQUEST
FOR INTERNATIONAL JUDICIAL ASSISTANCE
FOR PRODUCTION OF DOCUMENTS (LETTER ROGATORY)**

The United States alleges in a criminal indictment filed in June 2021 that Defendant Jean-Paul Van Avermaet conspired to "suppress and eliminate competition" for a contract to provide security services for a North Atlantic Treaty Organization (NATO) facility in Belgium. The United States further alleges that this action had a direct, substantial, and reasonably foreseeable effect on domestic U.S. commerce because NATO is "funded in part by the United States." Indictment ¶ 16. Yet the United States has produced only a limited and incomplete set of documents about the bid and about how the bidding process for the NATO contract unfolded. Additionally, although the United States provided the summary of an interview of one NATO official, who described the bidding for this contract as "fair and equitable," the United States has not produced the documents or information that support this exculpatory statement. Because these documents are material to the preparation of his defense and exculpatory in nature, and because a request for these documents from NATO meets the legal standard for issuance of a letter rogatory by a U.S. court, Mr. Van Avermaet requests that this Court issue the

accompanying letter rogatory, which seeks the assistance of NATO to produce the requested documents.[1]

## BACKGROUND

The June 29, 2021 indictment alleges that Mr. Van Avermaet "entered into and engaged in a combination and conspiracy to suppress and eliminate competition by allocating customers, rigging bids, and fixing prices for contracts for the provision of security services in Belgium, including . . . those with the North Atlantic Treaty Organization (NATO) Communications and Information Agency [(NCIA)][.]" Indictment ¶ 16. The government further alleges that NATO "is funded in part by the United States" and that this alleged conspiracy constituted an "unreasonable restraint of interstate and foreign trade and commerce." *Id*.

Even though the NATO contract is central to the government's case against Mr. Van Avermaet, the government produced very few documents about it. This included a small number of documents provided to the government by Securitas, one of the bidders for the contract; a report summarizing an interview of two U.S. government officials who worked at NATO; and reports summarizing interviews of two NATO contracting officials.

Mr. Van Avermaet repeatedly raised the deficiencies of these productions with the United States. On March 11, 2022, Mr. Van Avermaet requested documents related to the NATO contract, including: (1) the contract; (2) records and information related to the bidding process, the review and assessment of bids, the decision to award the contract, and copies of all bids submitted; (3) communications between NATO and bidders or prospective bidders; and (4) internal communications between or among NATO officials about contract specifications, the evaluation of bids, or the award decision. Letter from L. Phelan to B. Serino (Mar. 11, 2022),

---

[1] During the July 2, 2024 status conference, the United States informed the Court that it was not going to take a position on this motion until it reviewed the motion. July 2, 2024 Status Conf. Tr. at 9:25–10:4.

Ex. A at 3–4. The United States did not deny the existence or relevance of these documents, but responded only that, "[b]ecause NATO is an independent international organization, the United States does not have NATO files related to this case in its possession." Letter from B. Serino to L. Phelan (May 13, 2022), Ex. B at 2. Although Mr. Van Avermaet moved to compel the production of other discovery, he deferred filing a motion to compel discovery related to the NATO contract in light of his motion to dismiss that part of the indictment. ECF No. 29 at 6 n.1.

While the parties were litigating other issues, and without informing Mr. Van Avermaet, the United States contacted NATO and seemingly attempted to obtain some documents and information related to the NATO contract. On November 8, 2023, the United States informed Mr. Van Avermaet that, although it was able to interview two NATO officials about the contract (the reports of which the United States produced to Mr. Van Avermaet), "NATO has now definitively declined to provide documents related to this case." Letter from D. Hoffer to L. Phelan (Nov. 8, 2023), Ex. C at 3.[2] Attached to the government's November 8 letter was an email from Sean Van Ginderdeuren, Principal Legal Counsel, NATO Communications and Information Agency, which stated that the agency "enjoys full immunity from every form of legal process, unless expressly waived by the NATO Secretary General"; that "the NCI Agency staff is immune from legal process in respect of words spoken or written and of acts done by them in their official capacity and within the limits of their authority"; and that "every form of data or documentation handled by NCIA (as a subsidiary body of NATO) is covered by the inviolability of NATO archives." DCIS002-EML-00000001, Ex. D at 2. Van Ginderdeuren concluded, "Regrettably, NATO/NCIA cannot share additional NCIA-internal documentation (nor correspondence with third parties) on this or other (potentially) related matters in light of the

---

[2] Neither the government nor NATO addressed whether these individuals will be made available to testify at trial.

3

NATO immunity framework described above." *Id*. at 3.  However, Van Ginderdeuren explained further:

> In case the US Prosecutor would have specific grounds to consider that the NCIA's feedback (beyond what was already shared during the 27 May 2020 meeting) is essential to the resolution of a case concerning companies that have a direct contractual relationship with the NCIA, we kindly invite you to provide us with a reasoned request so we can review NCIA's position.  Such assessment would be performed by NCIA taking into account the limitations set out within the NATO immunity framework described above.

*Id*.  This offer notwithstanding, the United States did not make such a request to NATO and told the court that NATO refused to provide any further materials.  *See* Letter from D. Hoffer to L. Phelan (Mar. 15, 2024) ("As you know, the Government has tried on more than one occasion to obtain additional materials from NATO without success."), Ex. E at 4; Apr. 23, 2024 Status Conf. Tr. at 42:15–43:1 (representing that the United States "received a formal letter from NATO definitively declining to provide any additional documents to us.  We provided this letter to defense counsel last November and have ceased further efforts to collect materials from NATO.").

During a June 10, 2024 meet-and-confer call, the United States stated that it did not believe there were "specific grounds" to request additional documents from NATO, but offered to pass along to NATO any requests from Mr. Van Avermaet.  Following the Court's guidance during the July 2, 2024 status conference, Mr. Van Avermaet prepared a letter to NATO requesting documents related to the NATO contract.  On July 12, 2024, Mr. Van Avermaet provided that letter to the United States, and that same day the United States confirmed that it transmitted the letter to NATO.  On July 18, 2024, NATO replied that it would not be producing additional documents.  *See* Letter from S. Chan-Allen to D. Hoffer (July 18, 2024), Ex. G at 2.

4

As the Court advised during the July 2, 2024 status conference, Mr. Van Avermaet now moves for the issuance of a letter rogatory requesting the same categories of documents directly from NATO:

1. Documents and information showing the extent to which, if any, U.S. funds were used for the security services contract described in the indictment.

2. Documents and information related to the bidding process for this contract, including the bid submissions for each company that bid on the NATO contract, pricing, technical proposals, and communications between the bidders and NATO about the bids.

3. Documents and information reflecting internal NATO communications about the bidding process and the award decision of the contract.

Because these documents are material to the preparation of Mr. Van Avermaet's defense and because international comity does not caution against the request, the Court should grant the motion and issue the attached letter rogatory to NATO.

## LEGAL STANDARD

District courts have inherent authority to issue letters rogatory in both civil and criminal cases. *See United States v. Staples*, 256 F.2d 290, 292 (9th Cir. 1958) (explaining that all federal courts have "inherent power to issue Letters Rogatory"); *see* 28 U.S.C. § 1781. The decision to issue letters rogatory lies within the discretion of the district court. *United States v. Mason*, 919 F.2d 139, at *2 (4th Cir. 1990). The standard for issuance of a letter rogatory is the same as if the evidence were located in the United States. *United States v. Hoskins*, 2015 WL 4874921, at *5 (D. Conn. Aug. 14, 2015).

## ARGUMENT

I. **These Documents Are Material to Preparing Mr. Van Avermaet's Defense.**

The district court should issue the attached letter rogatory to NATO because the documents that Mr. Van Avermaet seeks are material to the preparation of his defense.

5

First, documents showing whether U.S. funds were used to pay for the NATO security-services contract are material because they concern an element of the offense charged, namely, the United States' allegation that the NATO contract had a direct, substantial, and reasonably foreseeable effect on domestic U.S. commerce. *See* Indictment ¶¶ 17, 21. Courts examine the details about how, if at all, U.S. funding is connected to contracts for work performed abroad to determine the nexus between the charged conduct and domestic commerce. For example, in *United States v. Anderson*, the defendant was charged with rigging bids in connection with Egyptian construction contracts financed by the U.S. Agency for International Development (USAID). 326 F.3d 1319, 1322–26 (11th Cir. 2003). To prove that the conduct had a direct, substantial, and reasonably foreseeable effect on domestic commerce, which is an element of a Sherman Act offense, the government presented "considerable evidence" about how the foreign contract was funded by USAID and the trail of financial transactions between the government and the U.S.-based contractors involved. *Id*. at 1330, 1323–25. As this is a critical element of the alleged offense, Mr. Van Avermaet is entitled to documents and information showing if and how U.S. funds were used to pay for the NATO contract.

The United States' productions, however, do not include critical information about how its partial funding of the NATO organization generally is connected to the contract described in the indictment. Although the United States produced a single interview report explaining how the United States provides funds to NATO, the official addressed only briefly what happens to the United States' money after NATO receives it: "the money loses its identity." 2020-06-11-RudyMBradleyJ-011, Ex. F at 2. The United States has not produced any documents showing what happens to these funds after they are received by NATO, including what money, if any, was used to fund the NATO contract referenced in the indictment.

6

Second, the production of NATO's complete bid file is necessary for Mr. Van Avermaet to prepare his defense against the charged conduct. The indictment alleges that Mr. Van Avermaet conspired to rig bids "by coordinating price increases; submitting artificially determined, non-competitive, inflated bids; and refraining from bidding for certain contracts." Indictment ¶ 17. But the United States has not produced the complete bid files for the NATO contract, which would include a complete set of all requests for proposals and contract documents, bids, and related communications with bidders. These documents are necessary to understand the allegation that the bidding companies submitted "non-competitive, inflated bids" or otherwise corrupted the bidding process for the NATO contract. *Id*. Indeed, the United States does not dispute that the bid files for the Department of Defense contract are material to Mr. Van Avermaet's defense, and the Court recently instructed the United States to produce such documents for earlier iterations of that contract. Apr. 23, 2024 Status Conf. Tr. at 10:8–11:5.

Third, the United States has not produced any internal NATO documents or communications regarding the evaluation of the submitted bids, including the pricing and technical proposals submitted. These documents are necessary to preparing a defense because the indictment alleges that Mr. Van Avermaet colluded to provide "security services at collusive, non-competitive prices." Indictment ¶ 18(f). Further, these documents are likely exculpatory because a NATO contracting officer described the bidding process as "fair and equitable," and internal NATO documents and communications likely would show the basis for that conclusion. These documents test the United States' core allegations related to the charged conduct and are therefore vital to Mr. Van Avermaet's case. A letter rogatory to obtain these documents is necessary and appropriate.

7

## II.     International Comity Weighs in Favor of Issuing the Letter Rogatory.

International comity poses no barrier to granting Mr. Van Avermaet's request for a letter rogatory.  There are five factors in a comity analysis: "(1) the importance to the . . . litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located." *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 482 U.S. 522, 544 n.28 (1987) (cleaned up).

On balance, these factors weigh in favor of granting Mr. Van Avermaet's request.  First, for the reasons explained above, the requested documents are material to preparing Mr. Van Avermaet's defense because they concern the United States' core claims about the alleged conspiracy and relate to specific elements of the offense charged.

Second, the document requests are narrowly tailored.  Mr. Van Avermaet's requests concern the discrete issues of whether United States funding was used to pay for the NATO contract and documents that typically are found in the bid file for a contract, such as documents about the bidding and award process for the contract.

Third, although the information originated outside the United States, by denying Mr. Van Avermaet's motion to dismiss, the Court has already ruled that the information is material to the case.  ECF No. 68 at 5 (concluding that the indictment alleged a conspiracy to rig bids for both NATO and DoD contracts).

Additionally, both factors four and five weigh in favor of issuing the letter. *See Arcelik A.S. v. E.I. DuPont de Nemours & Co.*, 2021 WL 2010816, at *5 (3d Cir. May 20, 2021) (stating that the fourth factor can "overcome" the third). Mr. Van Avermaet requested these documents from the United States, and the United States then directed these requests to NATO, which indicates that the United States is not aware of an alternative source for this information. Mr. Van Avermaet also requested these documents directly from NATO. NATO denied the requests from the United States and from Mr. Van Avermaet, therefore an official request from the Court is the last alternative means of attempting to obtain documents and information about the contract that would be responsive to Mr. Van Avermaet's requests. Regarding the fifth factor, NATO's noncompliance with the request would not undermine important interests of the United States. The United States itself has requested this information from NATO, thereby conceding that its interests—and, in its view, the interests of NATO—are not adversely affected by Mr. Van Avermaet's requests.

## CONCLUSION

The United States brought criminal charges against Mr. Van Avermaet for allegedly conspiring to rig bids for a NATO contract but has produced only minimal discovery about the contract at issue and the bidding process. Fundamental fairness requires that Mr. Van Avermaet have access to documents that are material to preparing his defense and are favorable to him. This request for information from NATO has been made as narrow and tailored as feasible and appropriate, and making this request is not inconsistent with principles of comity. For these reasons, the Court should grant Mr. Van Avermaet's request for judicial assistance and issue the attached letter rogatory.

Dated: July 23, 2024

/s/ Lisa Phelan
Lisa Phelan (Bar No. 1617073)
Joseph C. Folio III (Bar No. 1764923)
Morrison & Foerster LLP
2100 L. Street, NW, Suite 900
Washington, D.C. 20037
Telephone: (202) 887-1500
lphelan@mofo.com
jfolio@mofo.com

Eliot A. Adelson (*pro hac vice*)
Morrison & Foerster LLP
425 Market Street
San Francisco, California 94105
Telephone: (415) 268-7000
eadelson@mofo.com

*Counsel for Defendant Jean-Paul Van Avermaet*

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 23, 2024, I caused the foregoing Motion for Issuance of Request for International Judicial Assistance for Production of Documents (Letter Rogatory) to be filed using the Court's CM/ECF system, which will send an email notification of such filings to counsel of record.

                                              Respectfully submitted,

                                              */s/ Lisa Phelan*
Lisa Phelan (Bar No. 1617073)
Morrison & Foerster LLP
2100 L. Street, NW, Suite 900
Washington, D.C. 20037
Telephone: (202) 887-1500
lphelan@mofo.com

*Counsel for Defendant Jean-Paul Van Avermaet*